IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THE NORTHERN INSURANCE COMPANY     *
OF NEW YORK
                                   *
              Plaintiff
                                   *

       vs.                         CIVIL ACTION NO. MJG-01-2158
                                   *
BALTIMORE BUSINESS COMMUNICATIONS
INC.                               *

       Defendant                   *

*       *       *       *       *       *       *       *       *

MEMORANDUM AND ORDER

The Court has before it Baltimore Business Communications
Inc.'s Motion for Partial Summary Judgment, The Northern
Insurance Company of New York's Motion for Summary Judgment,
Baltimore Business Communications Inc.'s Motion to Strike
Irrelevant Material and the materials submitted by the parties
relating thereto.  The Court finds that a hearing is unnecessary.

I.    BACKGROUND

Defendant and Counterclaim-Plaintiff, Baltimore Business
Communications Inc. ("Baltimore Business"), owns a store in
Baltimore which sells wireless handheld portable telephones
("WHHPs") and assists customers in signing up for wireless
telephone service.  On May 1, 2001, Baltimore Business was served
with a class action complaint that named numerous defendants and

asserted that the plaintiffs had suffered "[radio frequency radiation's] biological effects and the risk to human health arising therefrom" as a result of their use of WHHPs sold and/or distributed by the defendants. Pinney v. Nokia Inc., No. CCB-01-1456 (D.Md)("Pinney"), Complaint ¶ 57.  One of the lead plaintiffs in Pinney alleged that she bought her WHHP at the store owned by Baltimore Business.

    Baltimore Business forwarded the Pinney Complaint to its liability insurance company, The Northern Insurance Company of New York ("Northern Insurance"), the Plaintiff and Counterclaim-Defendant in the instant suit.  Baltimore Business requested a defense against the action pursuant to the Commercial General Liability Policy ("CGL Policy" or "the Policy") it had been issued by Northern Insurance.  Northern Insurance however refused to defend or indemnify Baltimore Business, asserting that the CGL policy only covers "damages because of bodily injury" and Pinney is therefore outside its coverage.

    Northern Insurance filed the instant suit July 23, 2001 seeking declaratory relief regarding its duty to defend and indemnify Baltimore Business in conjunction with the Pinney case. By the subject motions, both parties move for summary judgment. In addition, Baltimore Business moves to strike certain material to which Northern Insurance referred in its Motion, Opposition

2

and Reply.

## II.   MOTION TO STRIKE

Baltimore Business moves to strike Northern Insurance's references, in its Motion, Opposition and Reply, to material outside of the Pinney Complaint. Under Maryland law,[1] the general rule regarding extrinsic evidence in a duty to defend/ indemnify analysis is:

> . . . if the allegations in the underlying complaint are ambiguous as to whether there exists a potentiality of coverage under an insurance policy, the insured may rely on extrinsic evidence. The insurer, however, may not use such evidence to contest coverage if the allegations in the underlying tort suit sufficiently establish a potentiality of coverage.

Sheets v. Brethren Mut. Ins. Co., 679 A.2d 540, 542 n. 2 (Md. 1996).

However, numerous Maryland Court of Appeals cases state in general terms that extrinsic evidence can be utilized in the duty to defend determination. See e.g., American Motorists Ins. Co. v. ARTRA Group, Inc., 659 A.2d 1295, 1306 (Md. 1995)("in determining whether a potentiality of coverage exists under an insurance contract, we must look at the terms of the policy and view them both in light of the allegations of the tort suit and in light of appropriate extrinsic evidence"); Sullins v. Allstate

---

[1]The parties agree that Maryland law applies to this case.

Ins. Co., 667 A.2d 617, 620 (Md. 1995)("to determine whether
there is a potentiality of coverage, we look to the policy, the
complaint, and extrinsic evidence, if any is adduced").

In addition, there are two scenarios in which extrinsic
evidence is clearly admissible for purposes of a duty to defend
analysis.  First, extrinsic evidence is admissible if it is
relevant to an alteration or amendment of the underlying
complaint.

> As we see it, however, appellees have not
> attempted to introduce extrinsic evidence in order
> to attack the merits of the Corradettis' claim
> against BGE, or to establish that the Corradettis
> would not prevail at trial; that is the type of
> "extrinsic evidence" that the insurer may not use.
> . . . Rather, appellees attempted to rely upon a
> change in the Corradettis' allegations which they
> assert removes the entire suit from the ambit of
> coverage. . . . We conclude that when the
> plaintiff amends the allegations, the changes in
> the allegations may be proffered by the insured
> and considered by the court to determine whether
> the insurer has a continuing duty to defend. . . .
> Recent opinions have made clear that the analysis
> centers on the actual allegations raised by the
> tort plaintiff, the terms of the policy, and
> extrinsic evidence, if any. . . .  The fact that
> the plaintiffs never formally amended their
> complaint to restate the allegations so as to
> reflect their revised theory of BGE's liability is
> of no moment.

Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co., 688
A.2d 469, 510 (Md. Ct. Spec. App. 1997).

Second, "[a] court may consider extrinsic evidence if the
facts asserted in the outside source are uncontroverted; however,

when a 'reasonable dispute' exists over the truth of such facts, the court is limited to examining the complaint and the policy." Mutual Ben. Ins. Co. v. Jordan, 2001 WL 313880 (4th Cir., 2001)(Maryland law).  In other words, "the court is not required to play the ostrich when uncontroverted evidence makes it clear that the exclusive pleading rule should not be applied."  Mt. Vernon Fire Ins. Co. v. Scottsdale Ins. Co., 638 A.2d 1196, 1204 (Md. Ct. Spec. App. 1994), aff'd in part, rev'd in part, on other grounds, Chantel Assoc. v. Mt. Vernon Fire Ins. Co., 656 A.2d 779 (Md. 1995).  Therefore, "if there is no reasonable dispute about the truth of the facts asserted in the 'other sources,' the court may rely on those undisputed assertions to determine whether there is a duty to defend."  Id.

In the instant case, the extrinsic material Baltimore Business seeks to have stricken consists of statements made in various pleadings as part of the Pinney case and four other similar cases[2] to which Baltimore Business is not a party. Specifically, the statements, made by both plaintiffs and defendants, assert that the only relief being sought in the underlying action is the provision of and/or reimbursement for

---

[2]Although Northern Insurance asserts that the four lawsuits it cites are identical to Pinney, the Court does not deem it necessary or proper to determine, for present purposes, whether the cases are identical, similar or entirely inapposite.

headsets.  The statements made in conjunction with the four other

cases are irrelevant and will be stricken.  In addition, any

statements of the defendants to the <u>Pinney</u> action are of such low

probative value that they too shall be stricken as irrelevant.

However, the statements made by the plaintiffs in the <u>Pinney</u>

action present a more difficult question.

The Court must first determine whether this extrinsic

evidence is relevant to an alteration of the underlying

complaint.  In the <u>Pinney</u> Complaint, the

> . . . Plaintiffs pray for the following relief:
>
> a.    For compensatory damages including but
>       not limited to amounts necessary to
>       purchase a WHHP headset for Plaintiff J.
>       Douglas Pinney and for each Class
>       Member;
>
> b.    Reimbursing Plaintiff Patricia S.
>       Colonell and for each Class Member
>       purchaser or lessee of a WHHP the cost
>       incurred in purchasing or acquiring a
>       headset;
>
> c.    Providing each Class member who has not
>       been so provided, a WHHP that can be
>       used with a headset;
>
> d.    Providing each Class member with
>       instructions for the use of a headset,
>       as well as reasons who a headset should
>       be used . . .

<u>Pinney</u> Complaint ¶ 100, 109, 114, 121, 133, 142, 149, 163.

The issue is whether the plaintiffs in <u>Pinney</u> have amended

their prayer for "compensatory damages including but not limited
to amounts necessary to purchase [or reimburse the cost of] a
WHHP headset" by their subsequent pleadings.  For example,
Northern Insurance cites to numerous statements the Pinney
plaintiffs made in their Opposition to Defendants' Joint Motion
to Dismiss (Northern Insurance Ex. 12) which, Northern Insurance
contends, explicitly limit the remedy sought to the cost of the
headsets.  One such statement reads,

> However, Plaintiffs are not seeking compensation
> for any personal injury suffered as a result of
> the use of cell phones.  Rather, their pecuniary
> injuries are limited to the defective product
> itself.  Plaintiffs' claims for damages relate to
> the need to repair or replace the portable
> wireless phones so as to remedy Defendants'
> failure to deliver a product that conforms with
> its contractual warranties and lives up to their
> representations.

Plaintiffs' Opp. p. 7; Northern Insurance Ex. 12, p. 7.

        Taking into account that the Pinney Class is limited to all
present and future WHHP purchasers or lessees who "have not been
diagnosed with a brain related tumor or cancer of the eye" and
that the Complaint states that "no individual issues of injury
exist," it is unclear whether Plaintiffs' admission in their
Opposition that all they seek is the cost of a headset is an
"amendment" of the Complaint.  Pinney Complaint ¶ 42, 47.
Although the Plaintiffs' prayer for relief seeks "damages

including but not limited to amounts necessary to purchase [and reimburse the cost of] a WHHP headset," a thorough reading of the Complaint makes clear that headsets are truly all the Plaintiffs are seeking.  Thus, the more definite statement of this request is not an amendment of the Complaint, but rather a clarification. Therefore, the extrinsic evidence at issue does not seem to fit squarely within the first exclusion.

However, the evidence at issue does fit within the second exclusion in that it is "uncontroverted."  The statements involved were made by the plaintiffs in the Pinney action, within the context of their lawsuit.  There can be no reasonable dispute about the truth of the plaintiffs' own assertions in their pleadings as to the scope of the relief they are requesting. Therefore, the Court can consider such statements in determining whether there is a duty to defend in the instant action. However, the Court finds that the statements at issue are of very small probative value in that the Pinney Complaint makes perfectly clear what the additional statements merely reiterate.

Therefore, the Motion to Strike is granted as to statements made in conjunction with cases other than Pinney, and any statements made by defendants in the Pinney case, but denied as

8

to statements made by the plaintiffs in the <u>Pinney</u> action.[3]

## III. SUMMARY JUDGMENT MOTIONS

### A.    LEGAL STANDARD

In deciding a summary judgment motion, the Court must look beyond the pleadings and determine whether there is a genuine need for trial. <u>See</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). The Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether that evidence is so one-sided that one party must prevail as a matter of law. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-53 (1986). If the Defendant carries its burden by showing an absence of evidence to support a claim, the Plaintiffs must demonstrate that there is a genuine issue of material fact for trial. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324-25 (1986).

An issue of fact must be both genuine and material in order to forestall summary judgment. An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the Plaintiff. <u>See</u> <u>Anderson</u>, 477 U.S. at

---

[3]Although the Court can consider the statements made by the <u>Pinney</u> plaintiffs in their pleadings, such statements are of little or no practical significance to the determination of the summary judgment motions discussed below.

248.  An issue of fact is material only if the establishment of
that fact might affect the outcome of the lawsuit under governing
substantive law.  See id.

     Maryland law regarding the duty to defend makes summary
judgment a particularly appropriate vehicle for resolving the
instant case:

> because [the insurance company's] duty to defend
> rests on the construction and interpretation of
> the contract, resolution by summary judgment is
> appropriate.

Utica Mut. Ins. Co. v. Miller, 746 A.2d 935, 939 (Md. 2000).

     B.   DISCUSSION

          1.   The Duty to Defend

     Under Maryland law, the obligation of an insurer to defend
its insured is determined by the allegations in the underlying
claim against the insured.  If the plaintiffs in the underlying
case "allege a claim covered by the policy, the insurer has a
duty to defend."  Brohawn v. Transamerica Ins. Co., 347 A.2d 842,
850 (Md. 1975).  In addition, even if the plaintiffs in the
underlying case do not "allege facts which clearly bring the
claim within or without the policy coverage, the insurer still
must defend if there is a potentiality that the claim could be
covered by the policy."  Id.  If the coverage issue depends upon
policy language which is ambiguous, the Court "must resolve that

ambiguity in favor of the insured before it can conclude that the insurer has or had an obligation to provide a tort defense."  St. Paul Fire & Marine Ins. Co. v. Pryseski, 438 A.2d 282, 286 (Md. 1981).

Thus, the Court must examine the terms of the insurance policy at issue to determine the scope and limitations of its coverage and then determine whether the allegations in the Pinney Complaint would potentially be covered under the policy.  See Aetna Cas. & Sur. Co. v. Cochran, 651 A.2d 859, 862 (Md. 1995); Chantel Assoc. v. Mount Vernon Fire Ins. Co., 656 A.2d 779, 784 (Md. 1995).

With regard to the duty to indemnify, "Maryland law recognizes that the duty to defend is broader than the duty to indemnify."  Nationwide Mut. Ins. Co. v. Mekiliesky, 976 F.Supp. 351, 354 (D. Md. 1997).  See also Litz v. State Farm Fire & Cas. Co., 695 A.2d 566, 569 (Md. 1997); Hartford Accident & Indem. Co. v. Sherwood Brands, Inc., 680 A.2d 554 (Md.Ct.Spec.App. 1996), vacated on other grounds, 698 A.2d 1078 (Md. 1997); 7C APPLEMAN, INSURANCE LAW & PRACTICE § 4684.  Therefore, if an insurer has no duty to defend in a given case, then that insurer will necessarily have no duty to indemnify in that case as well.

11

## 2.    The Policy Terms

The Northern Insurance Policy at issue provides that

Northern Insurance:

> . . . will pay those sums that the insured becomes
> legally obligated to pay as <u>damages because of</u>
> <u>"bodily injury"</u> or "property damage" to which this
> insurance applies.  We will have the right and
> duty to defend any "suit" seeking those damages.
> We may, at our discretion investigate any
> "occurrence" and settle any claim or "suit" that
> may result.
>
> *    *    *
>
> This insurance applies to "bodily injury" and
> property damage" only if:
>
> > (1)    The "bodily injury" or "property damage"
> > is caused by an "occurrence" that takes
> > place in the "coverage territory"; and
> >
> > (2)    The "bodily injury" or "property damage"
> > occurs during the policy period.

Northern Insurance CGL Policy Sec. I, Cov. A (emphasis added).

"Bodily injury" is defined as "bodily injury, sickness or

disease sustained by a person.  This includes mental anguish,

mental injury, shock, fright or death resulting from bodily

injury, sickness or disease."  Northern Insurance CGL Policy Sec.

V.  Northern Insurance argues that the <u>Pinney</u> Complaint does not

allege "damages because of bodily injury."

12

### 3.    "Damages Because of Bodily Injury"

The Court will assume for present purposes that the absorption of radio frequency radiation into human tissue, as alleged in the Pinney Complaint, constitutes "bodily injury."

However, the Court finds that even if the Pinney Complaint does allege "bodily injury," the remedy the plaintiffs in Pinney seek has no potentiality of falling within the category of "damages because of bodily injury."  The plaintiffs in Pinney seek the provision of a headset or reimbursement for the cost of a headset to use with their WHHPs.  Thus, the requested remedy is a preventative measure; the headsets are not sought to "make the Plaintiffs whole" with regard to any radio frequency radiation which has already been absorbed into their tissue.  The headsets are sought to prevent the possibility of future injury.   The Northern Insurance Policy at issue does not cover damages to prevent bodily injury; it covers damages because of bodily injury.

In sum, the Pinney plaintiffs are seeking the provision of a component part to their phones to ensure that they and other WHHP users will not be injured in the future by radio frequency radiation.   Thus, they are not seeking damages because of bodily injury; they are seeking to prevent future injury due to the alleged defect in the WHHPs.   Therefore, Northern Insurance has

no duty to defend or indemnify Baltimore Business in conjunction with the <u>Pinney</u> case.


IV.   <u>CONCLUSION</u>

For the foregoing reasons:

1.   Defendant and Counterclaim-Plaintiff Baltimore Business Communications Inc.'s Motion to Strike Irrelevant Material IS GRANTED IN PART AND DENIED IN PART.

a.   The Motion is GRANTED as to:

i.   All statements made in the pleadings of cases other than the <u>Pinney</u> case.

ii.   All statements made by the defendants in their pleadings in the <u>Pinney</u> case.

b.   The Motion is DENIED as to all statements made by the <u>Pinney</u> plaintiffs in their pleadings.

2.   Plaintiff and Counterclaim-Defendant The Northern Insurance Company of New York's Motion for Summary Judgment IS GRANTED.

3.   Defendant and Counterclaim-Plaintiff Baltimore Business Communications Inc.'s Motion for Partial Summary Judgment is DENIED.

4.   Judgment shall be entered by separate order.

SO ORDERED this _____ day of February, 2002.

_____
Marvin J. Garbis
United States District Judge

14