UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| THE NORTHERN INSURANCE COMPANY OF NEW YORK,<br><br>　　　　Plaintiff and<br>　　　　Counterclaim-Defendant,<br><br>　　　　v.<br><br>BALTIMORE BUSINESS COMMUNICATIONS, INC.,<br><br>　　　　Defendant and<br>　　　　Counterclaim-Plaintiff. | CIVIL ACTION NO.<br>MJG 01 CV 2158<br><br><br>ORAL ARGUMENT<br>REQUESTED |

**BALTIMORE BUSINESS COMMUNICATIONS, INC.'S
REPLY BRIEF IN SUPPORT OF ITS MOTION FOR
ATTORNEYS' FEES AND COSTS INCURRED
IN THIS INSURANCE COVERAGE ACTION**

The hours spent and hourly rates charged by Baltimore Business Communications, Inc.'s ("Baltimore Business") attorneys, Dickstein Shapiro Morin & Oshinsky LLP ("DSMO"), in this insurance coverage dispute were appropriate, reasonable and necessary, considering that DSMO obtained an immensely successful victory for Baltimore Business, whereas all other policyholders had lost their insurance coverage cases on nearly identical facts.

I.　　The amount of time spent to litigate against Northern Insurance to obtain the sole victory on these issues in the cellular telephone industry was necessary to obtain the extraordinary result.

　　　　DSMO has properly exercised its billing judgment in submitting its motion for attorneys' fees in this case. It was an extraordinary result: DSMO was able to obtain

insurance coverage when every other case that had been litigated concerning these novel issues had been lost.[1] When a party obtains an extraordinary result, it is entitled to its fees in full. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."). Northern Insurance ignored what the United States Supreme Court called the "importance factor of the 'results obtained.'" *Id.* Clearly, Baltimore Business obtained an extraordinary benefit from the effort and skill that DSMO put into the case, and it should be entitled to full compensation. Moreover, Baltimore Business believes that it was targeted by Northern Insurance, which sought to make Maryland law favorable to the insurance industry, because Baltimore Business was the smallest defendant, with limited resources, in the cell phone cases.

> A.   DSMO's fees were incurred to overcome the losses that other policyholders in the cellular telephone industry suffered in other jurisdictions.

DSMO expended significant resources in its approach to the motion practice and the appeal in this matter, not because it had never seen the issues before, but because it had seen the same issues before in several cases and in each one the policyholder lost.[2] The ongoing losses of policyholders' counsel around the country involving identical issues required DSMO to find new and innovative ways to present the policyholder's position and convince the Court that the insurance company must defend.

---

[1] In fact, Baltimore Business and DSMO persevered (and accepted the risk) when they lost in the District Court, successfully appealing to the Fourth Circuit.

[2] One of those losses was the *Audiovox* case in New York where Zurich sued its policyholder, DSMO represented that entity, and the insurance company won.

1660692 v1; ZL#C01!.DOC

Meckler Bulger & Tilson ("Meckler Bulger") never went back to the drawing board; it never tailored its research to Maryland law. A comparison of its reply in support of its motion for summary judgment filed in this case and those motions it filed in the *Motorola* and *Audiovox* insurance coverage cases shows they are nearly identical.[3] *Compare* Exs. A, B, and C, attached to the Affidavit of Paul L. Spackman, dated September 5, 2003 (attached hereto as Exhibit 1). While Meckler Bulger may have been content to reuse the briefs supporting its motions from one case to the next, DSMO knew that Maryland law was even stronger than that of the other states as to the duty to defend. To emphasize this point, DSMO was forced to craft a new argument because the old one failed to convincingly present Baltimore Business's position. A bottom-line comparison of DSMO's hours and Meckler Bulger's hours is not an accurate comparison and ignores the realities of the case. Moreover, Baltimore Business should be allowed discovery concerning how much Zurich/Northern Insurance spent on similar motions in its other cases concerning the issue of coverage for cell phone litigation.

Northern Insurance picked on the little guy. Baltimore Business believes that this was a calculated maneuver to select a policyholder less likely to be able to wage a major insurance coverage battle than some of the larger defendants in the Maryland-based cell phone case. Surely Northern Insurance did not select Baltimore Business because of the amount of its defense costs, which are undoubtedly less than those of many of the other very substantial defendants. In fact, the reason Baltimore Business has not paid its legal fees is because it is a small store that cannot easily afford to pay

---

[3] Counsel for Northern Insurance does not include in his calculations of what his firm spent on this case any costs of research or writing in those other matters.

3

major litigation fees – contrary to Northern Insurance's assertion that Baltimore Business had some other billing arrangement. Actually, DSMO and Baltimore Business had a standard fee arrangement, with no contingencies, but with the understanding from the very beginning that if Baltimore Business prevailed in its insurance coverage dispute, it would be entitled, under Maryland law, to attorneys' fees and expenses in the coverage action – as well as the cost of the underlying defense.

      This discussion really focuses on one of the central reasons why Northern Insurance picked the smallest defendant in the underlying matter, the one least able to defend itself, as its target for a federal insurance coverage action. Northern Insurance should not be allowed to pick on the littlest guy and then complain and challenge the fee arrangement simply because the little guy has difficulty paying the bills. If an insurance company is allowed to do this, it will undercut the Maryland public policy that allows the prevailing policyholder to collect coverage counsel fees from the insurance company, and it will be provide further incentive to insurance companies to deny coverage, especially to smaller policyholders.

      Because the Court can consider the result in determining the appropriate fee, and because DSMO was able to turn the tide of the cell phone decisions and assist Baltimore Business in obtaining a very significant duty to defend holding, the Court should allow Baltimore Business to solicit discovery from Northern Insurance relative to its motive for bringing this action against Baltimore Business. Baltimore Business suspects that executives at Zurich/Northern Insurance believed that Baltimore Business would not be able to find a top-notch law firm to take the risk of this case. Having first improperly denied coverage, they should not now be allowed to compound the harm

4

by paying reduced-cost attorneys' fees, where Baltimore Business found DSMO, and the law firm was willing to take some risk.

### B. DSMO applied a cost-effective approach to this matter.

DSMO spent more than 900 hours litigating this case. Nearly half of those hours were spent by Paul Spackman, the most junior associate on the case, and the attorney with the lowest billing rate. Northern Insurance's assertions that the case was a tool to "educate" Mr. Spackman are incorrect (and insulting). Mr. Spackman has worked in the insurance coverage group at DSMO as a law clerk beginning in 1996 and as an attorney since 2000. The use of Mr. Spackman in this matter was not to educate him, but was to rely heavily on a very capable attorney with the lowest hourly rate. Mr. Spackman ran the day-to-day operations of the case, provided initial drafts of all briefs, worked on all filings and on the appeal. The cost would have been much greater had Mr. Kolman done those tasks. This is cost effective case management and should not be dismissed as simply a training exercise.

Additionally, Northern suggests that a number of hours were spent cite checking and proofreading.[4] These are essential aspects of lawyering that appear missing in Plaintiff's Opposition, which contains a number of distracting failures to properly or consistently "Bluebook" its citations. *See* Pl.'s Opp. at 7, line 2. DSMO should not be penalized for employing higher standards in preparing briefs for this Court. In fact, the result speaks for the level of expertise and hard work that went into winning a case lost by several other fine law firms that frequently represent

---

[4] No percentage discount is necessary here. There is no bulk billing; obviously Meckler Bulger was able to allocate DSMO's time to particular tasks without a problem.

policyholders in insurance coverage matters. Moreover, the number of hours worked and the quality of the individuals who labored the most in this case contributed to Baltimore Business's victory over the Meckler Bulger firm and a very substantial insurance company.

II.   The hourly rates DSMO charged are reasonable in the community.

DSMO's attorneys' hourly rates are reasonable. A comparison to rates in Baltimore, Maryland, does not accurately reflect the reasonableness of these rates, because DSMO's office is in Washington, D.C. The United States Court of Appeals for the Fourth Circuit recognized that the "relevant community" when considering the market hourly rate can be in a community other than that in which the court is located. *See Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988). There, the court looked at two justifying factors: 1) that there was no locally available attorney with the required skills to handle the complex case; and 2) that the party acted reasonably by choosing counsel from another jurisdiction. *Id.* The court in that case relied on the market rates in Washington, D.C., where counsel was located, despite the fact that the case was litigated in Raleigh, North Carolina.

As Mr. Kolman stated in his affidavit dated August 7, 2003, in support of the motion for attorneys' fees, he has significant experience in the Baltimore legal market as well as in representing policyholders generally. Kolman Aff. at ¶ 5. To his knowledge, he is "not aware of any law firm in Baltimore that has the experienced resources to conduct a national level insurance coverage litigation, on the policyholder side, against one of the largest insurance companies in the country, represented by national counsel." *Id.* As Joseph O'Donnell of Baltimore Business stated, his counsel, Murphy & Murphy,

did not have the expertise or resources to conduct major insurance coverage litigation against a company with the type of resources that Zurich and Northern Insurance had. O'Donnell Aff. at ¶ 15, dated August 6, 2003. Baltimore Business has demonstrated that the relevant community is Washington, D.C.

This Court is well aware, from its experience in both the Baltimore and Washington, D.C. legal markets, that certain specialized fields have fewer expert attorneys and often require significantly higher fees. The "community" in this case was expert policyholder insurance coverage lawyers who would be willing to take on this major litigation against one of the industry giants that had already won the same issues in several other jurisdictions.

In *Domtar, Inc. v. Niagara Fire Insurance Co.*, the court recognized years ago that hourly rates for partners of $400 to $475 per hour were reasonable. 552 N.W.2d 738, 753 (Minn. Ct. App. 1996), *aff'd in relevant part*, 563 N.W.2d 724 (Minn. 1997). The court concluded that these rates were reasonable because the policyholder's counsel's office was in Washington, D.C., where office rental rates were four to five times higher than those in Minneapolis. Furthermore, the attorney had national experience representing policyholders in insurance coverage cases. That case should guide this Court on the reasonableness of attorneys' fees for DSMO's attorneys from a Washington, D.C. office, in an insurance coverage action.[5] The fact that in 1996 the Supreme Court of Minnesota found rates of $400 to $475 reasonable for a complex

---

[5] *Domtar*, 563 N.W.2d at 741.

7

insurance case with Washington, D.C.-based counsel,[6] strongly suggests that nearly nine years later Mr. Kolman's fees at $475 per hour also would be reasonable for his work done in this case, especially considering Mr. Kolman's twelve years of concentrated experience in insurance coverage matters and his familiarity with the federal courts in Maryland. Mr. Kolman already explained that these fees are consistent with other large law firms in the Washington, D.C. area. Kolman Aff. at ¶ 7. Northern Insurance has done nothing to refute this evidence, or suggest a different prevailing rate in the Washington, D.C. area.

There is no basis for a comparison to Northern Insurance's rates in this case. Based on DSMO's experience, Baltimore Business believes that Northern Insurance's attorneys' fees reflect a bulk discount and arguably do not reflect the actual billing rate Meckler Bulger would charge other clients. Furthermore, Meckler Bulger's fees are for work done out of its Chicago office, not out of Washington, D.C., or out of Maryland.[7] To compare Meckler Bulger's discounted fees to DSMO's standard rates is unjust. In fact, to the extent this Court relies on any comparison to Meckler Bulger's billing rates, Baltimore Business requests discovery as to whether, in fact, that rate is discounted and to what extent, and as to the actual billing rate Meckler Bulger charged its other clients.

---

[6] In addition to this judicial finding of the reasonableness of rates like Mr. Kolman's, if the Court deems it necessary, BBC will put forth further affidavits or testimony at an evidentiary hearing on this issue.

[7] Northern Insurance did not use Baltimore counsel to lead this case – though there are Baltimore attorneys with substantial expertise representing insurance companies in coverage disputes. The fact that Northern Insurance looked outside of Baltimore for its lead counsel in this matter further supports Baltimore Business's position that there is a limited number of attorneys in the Baltimore market that could properly litigate this case to the extent either DSMO or Meckler Bulger could.

III.     The hours DSMO billed were reasonable and necessary to achieve the result.

   A.     The work done by staff members at DSMO is recoverable.

Northern Insurance suggests removing 82.8 hours of paralegal/legal assistant time without any support for it. Paralegal or legal assistant work is recoverable. Jennifer Rieger was the lead paralegal on this matter and was responsible for assisting with every filing with this Court, including organization of exhibits, and ensuring that DSMO complied with court rules. Ms. Rieger has several years of specialized experience in insurance coverage matters and court procedure. DSMO employs legal assistants who have significant expertise in proofreading, quote checking, cite checking, and Bluebooking. The assistance of a paralegal on these jobs is a proper and cost-effective way to manage a case – again, less expensive than using associates to assure accuracy in briefing. DSMO has found this a cost-effective way to ensure that any court filing is the best product the firm can put forward. Accordingly, eliminating these hours is completely unwarranted and punitive.

   B.     Northern Insurance wants the winning party to recover fewer hours than Northern Insurance's attorneys billed.

After indiscriminately lopping off 82.8 hours, Northern Insurance suggests an arbitrary 60 percent reduction of the remaining hours DSMO attorneys and staff worked, reducing the total to 330 hours – **fewer than the number of hours worked by counsel for the losing side in this case.** Northern Insurance's random reduction of 60 percent is not supported by any case law. Additionally, Northern Insurance suggests that a blended rate of $210 per hour should be applied to partner/associate hours. That contradicts an early suggestion that Mr. Kolman's time be allowed to be billed at $275 per hour. Northern Insurance's attempt to calculate what it sees as a reasonable and

9

necessary fee totally fails to recognize the enormous success DSMO achieved for its policyholder and the quality of DSMO's work to achieve that success.  DSMO took on a more difficult case, had to work harder than Meckler Bulger, and won.  It should not be paid for fewer hours than the firm it defeated just because of that firm's discounted rates.

IV.  The fees for the time spent on the motion to dismiss are recoverable.

The most offensive suggestion in Northern Insurance's brief concerns the motion to dismiss.  The only reason Baltimore Business ever filed its motion to dismiss was because counsel for Northern Insurance failed to confirm Northern Insurance's corporate address.  *See* Affidavit of Maureen E. Murphy, dated September 19, 2001 (attached to Plaintiff's Motion to Dismiss).  *Best's Insurance* showed the plaintiff's headquarters address as Baltimore – and it still does.  There would have been no federal jurisdiction for this action if both parties were citizens of Maryland.  Northern Insurance's counsel were flippant and inconsiderate in their failure to provide some documentation to support their claim of diversity.  They precipitated the filing of the motion to ensure that this Court had subject matter jurisdiction over the case, and then they responded to the motion with the exact documentation Baltimore Business sought before the filing, receipt of which would have avoided the dispute.  This was all laid out in Baltimore Business' reply to the opposition to the motion to dismiss – and Baltimore Business thought that it was entitled to attorneys' fees at that time because of the blatant disregard for the Court's time and the attempted bullying of this small company.

Furthermore, a successful policyholder in an insurance coverage action is entitled to its fees for the work done, and there is no question that this work was done –

10

and done well. The Court should not look at the score at the end of each inning, but instead should look at the score at the end of the game. *See Commercial Union Ins. Co. v. Porter Hayden Co.*, 698 A.2d 1167, 1220 (Md. Ct. Spec. App. 1997) (refusing to look at who was the prevailing party on an "inning-by-inning basis").

V.      The expenses DSMO charged are reasonable.

For the majority of this matter, DSMO charged: $.20 per page for copying; $.10 per minute for long distance telephone calls; and $1.50 per page for outgoing faxes. Spackman Aff. ¶ 6. As of May 1, 2003, DSMO has reduced the amount it charges to: $.18 per page for copying; $1.25 per page for outgoing faxes; and now charges $.18 per page for laser printing. *Id.* ¶ 7. Furthermore, during the majority of the time that this lawsuit was ongoing, DSMO was actively involved in testing new Westlaw software and, as a result, the majority of online research in this matter was at absolutely no cost to the client and did not appear on any bill. As a result of DSMO's relationship with Westlaw, any Westlaw billing is provided to DSMO clients at a discount. Spackman Aff. *Id.* ¶ 8.

To alleviate Northern Insurance's concerns regarding DSMO's expenses, DSMO is more than willing to participate in an evidentiary hearing, if the Court requests.

1660692 v1; ZL#C01!.DOC

## Conclusion

For the foregoing reasons, Baltimore Business respectfully requests that this Court issue an award of attorneys' fees and costs as set out in its motion.

Dated: September 5, 2003

Respectfully submitted,

*/s/ Mark H. Kolman*

Mark H. Kolman, Bar No. 00424
Jerold Oshinsky
Karen Bush
DICKSTEIN SHAPIRO MORIN
 & OSHINSKY LLP
2101 L Street, NW
Washington, DC  20037
(202) 785-9700
(202) 887-0689 (facsimile)

- and –

Maureen E. Murphy, Bar No. 22881
MURPHY & MURPHY, L.L.C.
14 North Rolling Road
Catonsville, MD  21228
(410) 744-4967
(410) 744-8936 (facsimile)

Attorneys for Defendant and
Counterclaim-Plaintiff Baltimore Business
Communications, Inc.

1660692 v1; ZL#C01!.DOC

## CERTIFICATE OF SERVICE

I hereby certify that, on this 5th day of September 2003, a true and correct copy of the Baltimore Business Communications, Inc.'s Reply Brief in Support of Its Motion for Attorneys' Fees and Costs in This Insurance Coverage Action was sent by overnight courier upon the following counsel of record:

Steven E. Leder, Esq.  
The Leder Law Group  
502 Washington Avenue  
Suite 101  
Baltimore, MD 21204  

Steven J. Ciszweski, Esq.  
Philip R. King, Esq.  
Steven D. Pearson, Esq.  
Meckler Bulger & Tilson  
Suite 1800  
123 N. Wacker Drive  
Chicago, IL 60606  

_____  
Paul L. Spackman